UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE WORLD TRADE CENTER DISASTER SITE LITIGATION | 21 MC 102 (AKH) |
| WALDEMAR ROPEL AND KRYSTYNA ROPEL, <br><br> Plaintiff, <br><br> -against- <br><br> 88 GREENWICH, L.L.C., ET AL., <br><br> Defendants. | DOCKET NO. 06-CV-1520 |

## 88 GREENWICH LLC AND BLACK DIAMONDS LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

Preliminary Statement................................................................................1

I.     Plaintiff's Work at 88 Greenwich Street Did Not Constitute "Construction
       Work" Within the Meaning of New York Labor Law §241(6) and Thus
       Defendants are Entitled to Summary Judgment..........................................1

       A.     Labor Law §241(6) Applies Only to Construction, Excavation
              and Demolition Work...................................................................1

       B.     A Labor Law §241(6) Claim Must be Based on a Violation of
              Part 23 of the Industrial Code......................................................6

       C.     Plaintiff Fails to Allege Violations of Part 23 That Are Specific
              so as to Impose Liability Pursuant to Labor Law §241(6)...............7

II.    Defendants Are Not Liable Under Labor Law §241(6) Since They Did Not
       Control Plaintiff's Work or Have Notice of a Specific Dangerous or
       Defective Condition....................................................................13

       A.     Means or Methods Standard........................................................13

       B.     Premises Condition Standard......................................................14

       C.     A Premises Owner is Not Required to Protect Contractor
              Workers From Dangers Inherent in the Work or Against
              Hazards That the Workers Were Hired to Remediate..................17

Conclusion..............................................................................19

# TABLE OF AUTHORITIES

## Cases

*Abbadessa v. Ulrik Holding Ltd.,*
  664 N.Y.S.2d 620 (N.Y. App. Div. 1997) ................................................................. 18

*Acosta v. Banco Popular,*
  308 A.D.2d 308 (1st Dep't 2003) ............................................................................. 4

*Berardi v. Coney Island Ave. Realty, LLC,*
  31 A.D.3d 590 (2d Dep't 2006) ................................................................................. 5

*Bodtman v. Living Manor Love, Inc.*
  963 N.Y.S.2d 35 (N.Y. App. Div. 2013) .................................................................. 18

*Bombero v. NAB Constr. Corp.*
  780 N.Y.S.2d 333 (N.Y. App. Div. 2004) ................................................................ 17

*Buchholz v.Trump 767 Fifth Ave.,*
  4 A.D.3d 178 (1st Dep't 2004), *aff'd,* 5 N.Y.3d 1 (N.Y.2005) ................................. 8

*Byars v. Moore-McCormick Lines, Inc.*
  *155 F.2d 587 (2d Cir. 1946)* .................................................................................... 18

*Bykofsky v. Waldbaum's Supermarkets, Inc.*
  619 N.Y.S.2d 760 (N.Y. App. Div. 1994) ................................................................ 15

*Cahill v. Triborough Bridge & Tunnel Auth.,*
  819 N.Y.S.2d 732 (2006) (N.Y. App. Div. 2006) .................................................... 16

*Canning v. Barney's New York,*
  289 A.D.2d 32 (1st Dep't 2001) ............................................................................... 11

*Carty v. Port Auth of N.Y. and N.J.,*
  32 A.D.3d 732 (1st Dep't 2006) ................................................................................ 8

*Chowdhury v. Rodriguez.*
  57 A.D.3d 121 (N.Y. App. Div. 2008) ..................................................................... 15

*DaBolt v. Bethlehem Steel Corp.,*
  92 A.D.2d 70 (4th Dep't 1983) leave to appeal dismissed, 60N.Y.2d 554 (N.Y. 1983) ............ 3

*DiBenedetto v. Port Auth. Of N.Y. and N.J.,*
  293 A.D.2d 399 (1st Dep't 2002) ............................................................................. 4

*Fowler v. CCS Queens Corp.,*
    279 A.D.2d 505 (2d Dep't 2001) ............................................................................. 11

*Franza v. London Terrace Gardens,*
    No. 10251/02, 2005 WL 2312497 (N.Y. Sup. Ct. July 25, 2005) ............................. 10

*Garcia v. Piazza,*
    16 A.D.3d 547 (2d Dep't 2005) ................................................................................ 4

*Gasper v. Ford Motor Co.,*
    13 N.Y.2d 104 (N.Y.1963) ................................................................................ 15,17

*Giambalvo v. Nat'l R.R. Passenger Corp.,*
    850 F.Supp 166 (E.D.N.Y 1994) .............................................................................. 8

*Gordon v. Am. Museum of Natural History,*
    492 N.E.2d 774 (N.Y.1986) ............................................................................... 15,16

*Greenwood v. Shearson, Lehman & Hutton,*
    238 A.D.2d 311 (2d Dep't 1997) ............................................................................ 10

*Hatfield v. Bridgedale, LLC*
    28 A.D.3d 608 (2d Dep't 2006) ................................................................................ 4

*Joblan v. Solow,*
    91 N.Y.2d 457 (N.Y. 1998) ...................................................................................... 3

*Kaczmarek v. Bethlehem Steel Corp.*
    884 F.Supp 768 (W.D.N.Y. 1995) .................................................................. 7,12,13

*Kagan  v. BFP One Liberty Plaza*
    62 A.D.3d 531 (1st Dep't 2009) *leave to appeal denied*, 13 N.Y.3d 713 (2009) ............... 1,5,12

*Kesselbach v. Liberty Haulage, Inc.*
    182 A.D.2d 741 (2d Dep't 1992) .............................................................................. 3

*Knudson v. Pentzien, Inc.*
    209 A.D.2d 909 (3d Dep't 1994) ............................................................................ 10

*Kowalsky v. Conreco Co.*
    264 N.Y. 125 (N.Y. 1934) ................................................................................. 11-12

*Kwang ho Kim v. D & W Shin Realty Corp.,*
    47 A.D.3d 616 (2D Dep't 2008) .......................................................................... 7,9

*Lamela v. City of New York,*
   560 F.Supp 2d 214 (E.D.N.Y 2008) ..............................................................................7,8,15,16

*Madir v. 21023 Maiden Lane Realty, LLC.,*
   9 A.D.3d 450 (2d Dep't 2004) ......................................................................................11

*Mahoney v. Madiera Assocs.,*
   32 A.D.3d 1303 (4th Dep't 2006) ..................................................................................10

*Malczewski v. Cannon Design, Inc.*
   125 A.D.2d 941 (4th Dep't 1986) .....................................................................................4

*Mancini v. Pedra Constr.,*
   293 A.D.2d 453 (2d Dep't 2002) ..................................................................................10

*Marin v. San Martin Rest., Inc.,*
   731 N.Y.S.2d 70 (N.Y.App.Div. 2001) .........................................................................18

*Masone v. New York*
   563 N.Y.S.3d 992 (N.Y.Ct. Cl. 1990) ..........................................................................17

*McGrath v. Lake Tree Vill. Assocs.,*
   216 A.D.2d 877 (4th Dep't 1995) ..................................................................................10

*Mendoza v. Marche Libre Assocs.,*
   256 A.D.2d 133 (1st Dep't 1998) ..................................................................................11

*Meslin v. New York Post,*
   30 A.D.3d 309 (1st Dep't 2006) ..................................................................................10

*Morzillo v. State,*
   26 A.D.3d 315 (2d Dep't 2006) ..................................................................................3-4

*Mullin v. Genesee Cnty. Elec. Light, Power & Gas Co.,*
   202 N.Y. 275 (N.Y. 1911) ..........................................................................................18

*Nagel v. D & R Realty Corp.*
   99 N.Y.2d 98 (N.Y.2002) ..........................................................................................1-4

*Piacquadio v. Recine Realty Corp.,*
   646 N.E.2d 795(N.Y.1994) ..........................................................................................15

*Quinlan v. City of New York,*
293 A.D.2d 262 (1ST Dep't 2002) ........................................................ 11

*Ricuarte v. 45th St. Bake Corp.,*
35 A.D.3d 579 (2d Dep't 2006) ........................................................ 13

*Rodriguez v. Joseph*
149 A.D.2d 14 (1st Dep't 1989) ........................................................ 12

*Ross v. Curtis-Palmer Hydro-Electric Co.*
81 N.Y.2d 494 (N.Y.1993) ........................................................ 8,9

*Ruland v. Long Island Power Authority,*
5 A.D.3d 580 (2dDep't 2004) ........................................................ 8

*Salinas v. Barney Skanska Constr., Co.,*
2 A.D.3d 619 (2d Dep't 2003) ........................................................ 11

*Schwab v A.J. Martini, Inc.*
288 A.D.2d 654 (3d Dep't 2001) ........................................................ 10

*Soles v. Eastman Kodak Co.,*
616 N.Y.S.2d 871(N.Y. Sup. Ct. 1994) ........................................................ 10

*Sparkes v. Berger,*
11 A.D.3d 601 (2d Dep't 2004) ........................................................ 10

*Taylor v. United States*
121 F.3d 86 (2d Cir. 1997) ........................................................ 15,17

*Vernieri v. Empire Realty Co.,*
219 A.D.2d 593 (2d Dep't 1995) ........................................................ 2-3,8,10

*Violette v. Armonk Assocs., L.P.,*
849 F.Supp 923 (S.D.N.Y.1994) ........................................................ 10

*Weingarten v. Windsor Owners Corp.,*
5 A.D.3d 674 (2d Dep't 2004) ........................................................ 5

*Wilhouski v. Canon U.S.A.,*
622 N.Y.S.2d 319 (N.Y.App. Div. 1995) ........................................................ 11

*Zuniga v. Stam Realty,*
647 N.Y.S.2d 426 (N.Y.Sup. Ct. 1996) ........................................................ 3

**Statutes**

Labor Law § 200 ...........................................................................................13-19

Labor Law § 241(6) .........................................................................................1-13

**Other Authorities**

12 N.Y.C.R.R. § 23-1.3(f) ....................................................................... 12

12 N.Y.C.R.R. § 23-1.4(b) ........................................................................ 3

12 N.Y.C.R.R. § 23-1.4(b)(13) ................................................................. 3

12 N.Y.C.R.R. § 23-1.4(b)(16) ................................................................. 3

12 N.Y.C.R.R. § 23-1.4(b)(19) ................................................................. 3

12 N.Y.C.R.R. § 23-1.5 (c) ..................................................................9,10

12 N.Y.C.R.R. § 23-1.7(g) .................................................................11-13

12 N.Y.C.R.R. § 23-1.7(h) ...................................................................... 10

12 N.Y.C.R.R. § 23-1.8(b) ........................................................................ 9

12 N.Y.C.R.R. § 23-1.8(c)(4) ..............................................................10-11

12 N.Y.C.R.R. § 23-2.1(b)…. ................................................................. 11

## PRELIMINARY STATEMENT

This Reply Memorandum of Law is submitted in response to Plaintiff's opposition to 88 GREENWICH LLC AND BLACK DIAMONDS LLC'S ("88 GREENWICH and BLACK DIAMONDS") motion seeking summary judgment dismissing Plaintiff's Complaint against said Defendants, and in further support of Defendants' motion.

The Defendants refer the Court to the legal arguments set forth in the Defendants' Memorandum of Law in Support of Motion for Summary Judgment and Exhibits annexed thereto, as well as to incorporate the Building Owner Defendants' Memorandums of Law in Support of Motion For Summary Judgment of Plaintiff's Claims Brought Under Labor Law §§ 241(6) and 200, filed jointly on behalf of all defendants. (Reference ECF Document Nos. 5101 and 5095 filed under 21 MC 102 Docket).

**I.    Plaintiff's Work At 88 Greenwich Street Did Not Constitute "Construction Work" Within The Meaning of New York Labor Law §241(6) And Thus Defendants Are Entitled To Summary Judgment**

Section 241(6) requires building owners and general contractors to provide "reasonable and adequate protection and safety" to those engaged in construction, demolition or excavation work.  Because such work is considered "inherently hazardous" the traditional proof requirements of the common law are relaxed. See *Kagan v. BFP One Liberty Plaza,* 62 A.D.3d 531, 532 (1st Dep't 2009) *leave to appeal denied*, 13 N.Y.3d 713 (2009) (finding 241(6) inapplicable to clean-up work performed inside One Liberty Plaza in the aftermath of the World Trade Center collapse) (internal quotations and citation omitted); see also *Nagel v. D & R Realty Corp.*, 99 N.Y.2d 98, 100-03 (N.Y. 2002) (reviewing statutes's legislative history).

**A. Labor Law 241(6) Applies Only to Construction, Excavation and Demolition Work**

Labor Law § 241(6) provides, in relevant part:

All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, **when constructing or demolishing buildings or doing any excavation work in connection therewith,** shall comply with the following requirements:

\*                          \*                          \*

(6) All **areas in which construction, excavation or demolition work is being performed** shall be so constructed, shored, equipped, guarded, arranged, operated, and conducted as to provide reasonable and adequate protection and safety of the person employed therein or lawfully frequenting such places. **The commissioner may make rules to carry into effect the provisions of this subdivision**, and owners and contractors and their agents for such work, except the owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith.

(emphasis added).

The threshold issue for the imposition of liability under § 241(6) is that a plaintiff be a member of the special class protected by that statute (*i.e.*, one engaged in construction, demolition or excavation at the time of the claimed injuries). *Vernieri v. Empire Realty Co.*, 219 A.D.2d 593, 595, (2d Dep't 1995) ("threshold question that must be answered is whether the plaintiff engaged in a type of work which falls within the scope of Labor Law § 241(6), specifically, whether the injury occurred in an area 'in which construction, excavation or demolition work is being performed'"). Absent a showing that a plaintiff was a member of the special class that § 241(6) is "patent[ly]" designed to protect, a Labor Law § 241(6) claim fails. *See Nagel v. D&R Realty Corp.*, 99 N.Y.2d 98 at 102-03, (dismissing § 241(6) claim because plaintiffs' work "constituted maintenance work that was not connected to construction, demolition or excavation of a building or structure and is therefore not within the statute's coverage"); *Vernieri*, 219 A.D.2d at 595 (affirming grant of summary judgment where "at the time plaintiff was allegedly injured, there was no 'construction, excavation or demolition work' (Labor Law § 241[6]) being performed in the building").

To determine whether a plaintiff was engaged in the requisite "construction, excavation or demolition work" within the scope of the protection of Labor Law § 241(6), the New York courts rely on the definitions of "[c]onstruction work", "[e]xcavation work" and "[d]emolition

work" found in 12 N.Y.C.R.R. § 23-1.4(b).  *Nagel*, 99 N.Y.2d at 102-03; *Joblon v. Solow*, 91

N.Y.2d 457, 466 (N.Y. 1998) (courts "look to the regulations contained in the Industrial Code

(12 NYCRR 23-1.4[b][13]) to define what constitutes construction work within the meaning of"

§ 241); *see also Morzillo v. State*, 26 A.D.3d 315 at 316, 809 N.Y.S.2d at 537-38; *Vernieri*, 219

A.D.2d at 595, 631 N.Y.S.2d at 380; *Kesselbach v. Liberty Haulage, Inc.*, 182 A.D.2d 741 at

742, 582 N.Y.S.2d at 740; *Malczewski v. Cannon Design, Inc.*, 125 A.D.2d 941 at 941, 510

N.Y.S.2d at 339 (4th Dep't 1986) ; *DaBolt v. Bethlehem Steel Corp.*, 92 A.D.2d 70, 73-74, 459

N.Y.S.2d 503, 505-06 (4th Dep't), *lv. dism'd*, 60 N.Y.2d 554, 467 N.Y.S.2d 1029 (1993);

*Zuniga*, 169 Misc.2d at 429, 647 N.Y.S.2d at 1008-09; *Giambalvo v. National R.R. Passenger*

*Corp.*, 850 F.Supp. 166, 171 (E.D.N.Y. 1994).

   12 N.Y.C.R.R. § 23-1.4(b)(16) defines **"Demolition work"** for the purposes of Part 23

and Labor Law § 241(6) as:

> The work incidental or associated with the total or partial dismantling or razing of
> a building or other structure including the removing or dismantling of machinery
> or other equipment.

**"Excavation work"**, in turn, is defined by § 23-1.4(b)(19) as "[t]he removal of earth, rock or

other material in connection with construction or demolition operations."  Finally, **"construction**

**work"** or "constructing", as used in Labor Law § 241(6), is defined by 12 N.Y.C.R.R. § 23-

1.4(b)(13) as follows:

> Construction work.  All work of the type performed in the construction, erection,
> alteration, repair, maintenance, painting or moving of building or other structures,
> whether or not such work is performed in proximate relation to a specific building
> or other structure and includes, by way of illustration, but not by way of
> limitation, the work of hoisting, land clearing, earth moving, grading, excavating,
> trenching, pipe and conduit laying, road and bridge construction, concreting,
> cleaning of the exterior surfaces including windows of any building or other
> structure under construction, equipment installation and the structural installation
> of wood, metal, glass, plastic, masonry and other building materials in any form
> or for any purpose.

   While the Industrial Code defines "construction work" broadly to include, for example,

maintenance and painting, the Court of Appeals has cautioned that the definition "must be

construed consistently with this Court's understanding that section 241 (6) covers industrial

accidents that occur in the context of construction, demolition and excavation." *Nagel,* 99 N.Y.2d at 103. In applying Section 241(6), courts have restricted the covered "construction, demolition or excavation" activities to those which result in a significant "change [in] the structural quality" of the building at issue. *Malczewski*, 125 A.D.2d at 942. *See also Giambalvo*, 850 F. Supp. At 171 ([a]lthough the definition of construction work set forth in the Industrial Code is quite broad, and includes such activities as 'alterations,' 'repairs,' and 'maintenance," New York courts that have interpreted both the statute and the Industrial Code have concluded that the enumerated activities 'must occur during the construction, demolition or excavation of a building or structure,'" (*quoting Malczewski, 125 A.D.2d at 942*); *Nagel,* 99 N.Y.2d at 102-03) (worker performing elevator inspection is not within scope of 241(6) because "injuries plaintiff sustained here did not occur in the context of construction, demolition or excavation"); *Hatfield v. Bridgedale, LLC*, 28 A.D.3d 608, 609-10 (2d Dep't 2006) (plaintiff injured in fall from billboard during work that did not "change the billboard's structure" was not within "the protections of Labor Law § 241(6)") (internal quotations and citation omitted): *Morzillo*, 26 A.D.3d at 316 (affirming summary judgment dismissing 241(6) claim brought by electrician injured while changing existing electrical box at hospital because plaintiff was not engaged in construction, excavation or demolition work at the time of injury); *Garcia v. Piazza*, 16 A.D.3d 547, 548 (2d Dep't 2005) (summary judgment dismissing § 241(6) claim affirmed where worker hired to install windows and siding was not engaged in "construction work" when he fell from ladder while cleaning snow off roof); *Acosta v. Banco Popular*, 308 A.D.2d 308 A.D.2d 48, 49-50 (1st Dep't 2003) (finding 241(6) inapplicable to an injury sustained during installation of a key box because the protections 241(6) do not extend to claims arising out of building maintenance conducted outside of the construction context); *DiBenedetto v. Port Auth. of N.Y. and N.J.*, 293 A.D.2d 399, 399 (1st Dep't 2002) (plaintiff's Labor Law § 241(6) claim was "properly dismissed since he was not engaged in 'construction work' when he fell") (citation omitted).

Labor Law § 241(6) has been held inapplicable to clean-up work related to the World

Trade Center's collapse. In a case arising out of the cleaning efforts following the September 11th attacks, the Appellate Division held that cleaning work performed at a Lower Manhattan building location as a result of the collapse of the World Trade Center was <u>not</u> "connected to the inherently hazardous work of construction, excavation or demolition" covered by §241(6). *Kagan,* 62 A.D.3d at 532 (*citing Nagel,* 99 N.Y.2d 98 at 101); *see also Berardi v. Coney Island Ave. Realty, LLC*, 31 A.D.3d 590, 591 (2d Dep't 2006) ("defendant established its entitlement to summary judgment by showing that the activity in which plaintiff was engaged in the time of his injury was routine cleaning in a nonconstruction, nonrenovation context, and thus outside the scope of Labor Law . . . § 241(6)"); *Weingarten v. Windsor Owners Corp.*, 5 A.D.3d 674, 677 (2d Dep't 2004) (recovery unavailable under Labor Law 241(6) because plaintiff's alleged "accident did not occur in connection with construction, demolition, or excavation work").

In the instant action, the plaintiff does not dispute the following facts: At sites where he was employed by Pinnacle, he was supervised by Pinnacle. Exhibit F at 132:7-17. The Plaintiff was employed by Pinnacle Environmental to work at the 88 Greenwich Street job site. Exhibit L at 2. Pinnacle was hired by Neal Cohen, project manager for World Wide Holdings Corporation which oversaw cleaning of 88 Greenwich following the events of 9/11. Exhibit H at 29:22-30:8, 41:23-42:8, 39:11-19 and at 40:17-41:3. Neal Cohen hired Pinnacle to clean only the outside of the building at 88 Greenwich Street using a cherry-picker truck. Exhibit H at 41:23-42:8. Pinnacle did no work at the time in the interior of 88 Greenwich Street. Exhibit H at 42:9-12. Pinnacle's work took place outside of the building cleaning the exterior and windowsills with the use of a cherry-picker. Exhibit H at 124:14-125:18. Pinnacle's work did not entail entering 88 Greenwich Street and was all done from the exterior of the building. Exhibit H at 125:15-25. Pinnacle did no other work in the building other than cleaning the exterior and windowsills. Exhibit H at 144:4-8. Pinnacle decided what equipment was to be used at 88 Greenwich in order to perform the exterior cleaning. Exhibit H at 193:12-20. The Defendants did not provide respirators to employees of contractor's hired to work at 88 Greenwich Street in the aftermath of 9/11.

Exhibit H at 130:14-19.  Plaintiff's Local 78 member work history indicates he performed 22.5 hours of work at 88 Greenwich Street while employed by Pinnacle during the week of September 17, 2001. Exhibit G. Immediately following the events of 9/11, Pinnacle was hired to clean only the exterior of the building located at 88 Greenwich Street. Exhibit H at 41:23 - 42:8. Pinnacle's payroll records demonstrate that Pinnacle employees worked at 88 Greenwich Street for two days following the events of 9/11. Exhibit L. The payroll record lists the names of the Pinnacle workers who worked at 88 Greenwich Street on either Saturday, September 22 and/or Sunday, September 23, 2001. Exhibit L. 13 Pinnacle employees are listed on the Pinnacle payroll record as having worked at 88 Greenwich Street on either one or both of those days. Exhibit L. The plaintiff, Waldemar Ropel is listed on the payroll record as having worked for Pinnacle at 88 Greenwich Street for 11 hours on September 22, 2001 and 11.5 hours on September 23, 2001, for a total of 22.5 hours. Exhibit L at 2. A three page invoice from Pinnacle dated 10/5/01 to Black Diamonds L.L.C. states that Pinnacle performed "clean up due to dust from the WTC disaster and power washed the exterior of the building as per the attached time and material voucher" at 88 Greenwich and that the work was completed September 24, 2001. Exhibit K at 1. The Pinnacle Time and Material Voucher attached to the invoice indicates that Pinnacle's work at 88 Greenwich Street took place between September 22 and September 24, 2001 and states that Pinnacle performed "EMERGENCY CLEAN UP OF EXTERIOR OF BUILDING DUE TO WTC DISASTER". Exhibit K at 2.

While working at the 88 Greenwich Street jobsite, the Plaintiff's work, performed entirely outdoors on the outside of the building, constituted **cleaning** of the building's façade. Accordingly, he cannot establish that he performed construction, demolition or excavation work and is thus barred form recovery under Labor Law 241(6).

### B. A Labor Law §241(6) Claim Must Be Based On A Violation Of Part 23 Of The Industrial Code.

To survive a motion for summary judgment a plaintiff proceeding under §241(6) must demonstrate that an owner has violated one of the implementing regulations set forth by the

Industrial Board of Appeals. *Kaczmarek v. Bethlehem Steel Corp.,* 884 F.Supp. 768 at 779. "In

other words, there is no direct claim for a violation of §241(6) itself; a plaintiff must prove a

violation of one of its implementing regulations." *Lamela v. City of New York*, 560 F.Supp.2d

214, 226 (E.D.N.Y. 2008).

In his opposition to Defendants' motion for summary judgment Plaintiff alleges

violations of the following Industrial Code Regulations: 12 N.Y.C.R.R. [§] 23-1.5 (c); 12

N.Y.C.R.R. [§] 23-1.7 (g); 12 N.Y.C.R.R. [§] 23-1.7 (h); 12 N.Y.C.R.R. [§] 23-1.8 (c) (4); 12

N.Y.C.R.R. [§] 23-1.8 (b); and 12 N.Y.C.R.R. [§] 23-2.1 (b).

None of these cited statues or regulations can support plaintiff's §241(6) claims.

### C.  Plaintiffs Fail To Allege Violations of Part 23 That Are Specific So As To Impose Liability Pursuant to Labor Law §241(6)

To support a claim under §241(6), the section of Part 23 "alleged to have been breached

must be a specific, positive command and be applicable to the facts of the case." *Kwang Ho Kim*

*v. D & W Shin Realty Corp.*, 47 A.D.3d 616, 619 (2d Dep't 2008) (citation omitted). If the

alleged provision provides only general guidance or standards (such as requiring "proper" or

"appropriate" equipment), it is not sufficient to form the basis of a §241(6) claim.  As the New

York Court of Appeals has observed, a specific, affirmative command in an applicable Industrial

Code provision is crucial not only to maintaining a §241(6) claim, but also to preserving the

legislative scheme in the Labor Laws:

> The duty to provide materials and equipment 'of such kind and quality as a
> reasonable and prudent [person] experienced in construction … operations would
> require in order to provide safe working conditions' adds nothing to the general
> common-law rule requiring the provision of a safe workplace.  It is not so much a
> 'specific, positive command' as a routine incorporation of the ordinary tort duty
> of care into the Commissioner's regulations.  As such, it cannot by itself be relied
> upon as the source of an owner's or general contractor's nondelegable duty to all
> workers assigned to perform construction chores on the premises.  ***Indeed, to
> permit the plaintiff to use this broad, nonspecific regulatory standard as
> predicate for an action against a nonsupervising owner or general contractor or
> under Labor Law § 241(6) would seriously distort the scheme of liability for***

> ***unsafe working conditions that has been developed in our case law.*** … If
> plaintiff's argument were to succeed [], injured workers could readily circumvent
> that requirement by pointing to the use of some 'general term' such as 'adequate,'
> 'effective,' 'proper,' 'safe,' or 'suitable,' in a relevant regulation within the
> Industrial Code.

*Ross v. Curtis-Palmer Hydro-Electric Co.*, 81 N.Y.2d 494 at 504 (citations omitted)(emphasis added).

Where a plaintiff is unable to plead or prove a violation of such a concrete standard set forth in Part 23 of the Industrial Code, that plaintiff's § 241(6) claim fails. *See Carty v. Port Auth. of N.Y. and N.J.*, 32 A.D.3d 732, 733-34 (1st Dep't 2006) (affirming grant of summary judgment on § 241(6) claim in absence of showing of noncompliance with specific safety standard set forth in the Industrial Code); *Vernieri*, 219 A.D.2d at 597-98 (affirming grant of summary judgment dismissing § 241(6) claim where, *inter alia*, plaintiff failed to establish violation of "a specific provision of the industrial code sufficient to premise liability under Labor Law § 241(6)"); *See also Giambalvo*, 850 F.Supp. at 171 n.3 (because § 241(6) "is not self-executing, the 'failure to specify the violation of any [of the implementing] regulation[s] is fatal'" to a § 241(6) claim) (citation omitted).

Whether an Industrial Code provision is applicable is a question of law for the court. *Lamela*, 560 F.Supp.2d at 226; *see also Buchholz v. Trump 767 Fifth Ave.*, 4 A.D.3d 178, 179 (1st Dep't 2004), *aff'd.* ( N.Y.2005) ("the question of the applicability of the [Industrial Code] section is a purely legal one.") "In making that determination, both the parties and conditions at the site must fall within the class to which the regulation was intended to apply." *Lamela*, 560 F.Supp. 2d at 226 (*citing Ruland v. Long Island Power Authority*, 5 A.D.3d 580, 581 (2d Dep't 2004)).

Similar to the failure of Plaintiffs' citation to non-Part 23 standards in their effort to support a claim under 241(6), all but one of the Part 23 Industrial Code sections Plaintiff has identified in his opposition to Defendants' motion are too general to sustain a claim under §241(6).  The first two cited provisions involve respirator and eye protection.

8

**12 NYCRR § 23-1.8 (b)** states, in part:

Where this Part (rule) requires a respirator to be provided, the employer shall furnish and the employer shall use an approved respirator.  Such respirator shall be approved for the type of operation for which it is to be used and for the particular air contaminant present.

As discussed above, "[t]he rule or regulation alleged to have been breached, in an action brought under [§241(6)] must be a specific, positive command and be applicable to the facts of the case." *Kwang Ho Kim*, 47 A.D.3d 616. §23-1.8(b) speaks only of respirators "approved for the type of operation for which it is to be used" be employed. Such general guidelines cannot form the basis of a §241(6) claim. *Ross*, 81 N.Y.2d at 502 ("claimed failures to measure up to such general regulatory criteria as 'adequate,' 'effective,' and 'proper,' are not sufficient to give rise to a triable claim for damages under Labor Law §241(6).")

Regardless, in the instant action, Plaintiff admits he was provided with and wore a respirator while working at the 88 Greenwich Street job site. Exhibit E at 231:8 – 232:2.

Plaintiff additionally cites to 12 NYCRR §§ 23 – 1.5 (c) as alleged bases for his §241(6) claims. This is an Industrial Code section having to do with the employer providing his workers with equipment which is in good working condition.

**Section 23-1.5 (c)** states, in part:

No employer shall suffer or permit an employee to use any machinery or equipment which is not in good repair and in safe working condition.

Again, beyond the fact that the Plaintiff herein worked exclusively outdoors at the building in question and was provided with a respirator and other personal protective equipment by his employer in order to perform his work safely, the provision again fails to provide the type of specific, affirmative guidance required by §241(6), instead referring to "machinery" and "equipment", without providing owners or contractors with the necessary concrete guidance or

specific commands to follow. These Industrial Code sections, therefore, cannot form the basis of a §241(6) claim.

Once more, 12 N.Y.C.R.R. §23-1.5 (c) is a general safety standard and again does not afford a basis for relief under Labor Law 241(6). *See Violette v. Armonk Assocs. L.P.,* 849 F.Supp 923 at 928; *Mahoney v. Madiera Assocs.,* 32 A.D.3d 1303, 1305 (4th Dep't 2006); *Carty,* 32 A.D.3d at 733; *Meslin v. New York Post,* 30 A.D.3d 309, 310 (1st Dep't 2006); *Sparkes v. Berger* 11 A.D.3d 601, 602 (2d Dep't 2004); *Mancini v. Pedra Constr.,* 293 A.D.2d 453, 454 (2d Dep't 2002); *Schwab v. A.J. Martini, Inc.,* 288 A.D.2d 654, 656 (3d Dep't 2001); *Greenwood v. Shearson, Lehman & Hutton,* 238 A.D.2d 311 at 312; *Vernieri,* 219 A.D.2d at 598; *McGrath v. Lake Tree Vill. Assocs.,* 216 A.D.2d 877 at 878; *Knudsen v. Pentzien, Inc.,* 209 A.D.2d 909 at 910-11; *Franza v. London Terrace Gardens,* 2005 WL 2312497 at *5 ; *Soles v. Eastman Kodak Co.,* 616 N.Y.S.2d 871, 873.

Accordingly, allegations that 12 N.Y.C.R.R. §23-1.5 (c) was violated cannot, as a matter of law, support Plaintiff's Labor Law 241(6) claims.

Plaintiffs additionally cite to 12 NYCRR §§ 23-1.7(h) and 23-1.8(c)(4) as alleged bases for their §241(6) claims, both of which are Industrial Code sections having to do with the use of corrosive substances. the provisions again fail to provide the type of specific, affirmative guidance required by §241(6), instead referring to "appropriate protective apparel" and "approved eye protection," without providing owners or contractors with the necessary concrete guidance or specific commands to follow. These Industrial Code sections, therefore, cannot form the basis of a §241(6) claim.

**Section 23-1.7(h)** states, in part:

All corrosive substances and chemicals shall be so stored and used as not to endanger any person. Protective equipment for the use of such corrosive substances and chemicals shall be provided by the employer.

**Section 23-1.8(c)(4)** states, in part:

Every employee required to use or handle corrosive substances or chemicals shall be provided with and shall be required to wear appropriate protective apparel as well as approved eye protection.

Beyond the fact that the Plaintiff herein did not use, handle or store corrosive substances or chemicals, the provisions again fail to provide the type of specific, affirmative guidance required by §241(6), instead referring to "appropriate protective apparel" and "approved eye protection," without providing owners or contractors with the necessary concrete guidance or specific commands to follow. These Industrial Code sections, therefore, cannot form the basis of a §241(6) claim.

Another allegation by the Plaintiff attempts to incorporate 12 NYCRR § 23-2.1(b) as a further bases for §241(6) claims. This section of the Industrial Code pertains to varied areas of general workplace supervision and disposal.

**12 NYCRR § 23-2.1 (b)** states, in part:

Debris shall be handled and disposed of by methods that will not endanger any person employed in the area of such disposal or any person lawfully frequenting such area.

Once more, 12 N.Y.C.R.R. § 23-2.1(b) is a general safety standard and again does not afford a basis for relief under Labor Law § 241(6). *See, Madir v. 21023 Maiden Lane Realty, LLC*, 9 A.D.3d 450, 452 (2D Dep't 2004); *Salinas v. Barney Skanska Constr. Co.,*, 2 A.D.3d 619, 622 (2d Dep't 2003); *Quinlan v. City of New York*, 293 A.D.2d 262, 263 (1st Dep't 2002); *Canning v. Barney's New York*, 289 A.D.2d 32, 33-34 (1st Dep't 2001); *Fowler v. CCS Queens Corp.*, 279 A.D.2d 505, 505 (2d Dep't 2001); *Mendoza v. Marche Libre Assocs.*, 256 A.D.2d 133, 133 (1st Dep't 1998).

The final Industrial Code provision that the plaintiff claims to have been violated is

Section 23-1.7(g), which applies when a plaintiff is working in an unventilated confined area.

**Section 23-1.7(g)** states, in relevant part:

> The atmosphere of any unventilated confined area including but not limited to a sewer, pit, tank or chimney where dangerous air contaminants may be present or where there may not be sufficient oxygen to support life shall be tested by the employer, his authorized agent or by a designated person before any person is suffered or permitted to work in such area.

"'Unventilated, confined area' is not a defined term in the regulations and, as such, its

meaning must be construed in light of the regulations as a whole and 'according to the ordinary

and plain sense of its words.'" *Kaczmarek*, 884 F.Supp. at 780 (citing *Violette*, 849 F.Supp. 923,

928 (S.D.N.Y. 1994) (quoting *Rodriquez v. Joseph*, 149 A.D.2d 14 (1st Dep't 1989)). While

"confined area" is not defined in §23-1.7(g) of the Industrial Code, the Industrial Code does

define "confined space" as

> "[a] tank, vault or similar enclosed structure or space with restricted means of egress, such as a manhole trap door, which is so enclosed and of such volume that natural ventilation through openings provided will not prevent the accumulation of dangerous air contaminants nor supply sufficient oxygen to protect the life, health and safety of any person occupying such structure or space."

12 N.Y.C.R.R. § 12-1.3(F) The Court in *Kaczmarek* found this definition instructional when

construing §23-1.7(g). *Kaczmarek*, 884 F.Supp. at 780 (finding Industrial Code 23-1.7(g) was

not violated because plaintiff did not work in an unventilated, confined space as defined by 12

N.Y.C.R.R. § 23-1.3(f)).

The applicability of § 23-1.7(g) has been resolved in the context of the World Trade

Center litigation. In the *Kagan* case, the First Department of the Appellate Division held that an

office space in a commercial office building being cleaned of dust and debris after the September

11th terrorist attacks is not a "unventilated, confined area" for purposes of Labor Law §241(6).

*Kagan*, 62 A.D.3d at 532. In affirming the dismissal of the plaintiff clean-up worker's §241(6)

12

claim, the court held that "Industrial Code 12 NYCRR §23-1.7(g) is inapplicable to the facts of this case since it expressly applies to work in any 'unventilated *confined* area,' such as a sewer, pit, tank, or chimney, 'where dangerous air contaminants may be present or where there may not be sufficient oxygen to support life.'" *Id.* at 122.

Similarly, the District Court in *Kaczmarek* found that the pump house where plaintiff worked was **not** an "unventilated confined area" within the meaning of §23-1.7(g) as it "was a room sixty feet by forty feet with high ceilings, had large doors opened [at] both ends, and was ventilated by two large fans." *Kaczmarek*, 884 F.Supp. at 780; *see also Ricuarte v. 45th St. Bake Corp.*, 35 A.D.3d 579, 579-580 (2d Dept. 2006) (reversing Supreme Court's denial of summary judgment and dismissing Labor Law §241(6) claim based on §23-1.7(g) because basement where plaintiff was working was not an "unventilated confined area").

In the instant matter, the Plaintiff's work at 88 Greenwich Street took place entirely *outside* of the building cleaning its facade and thus 23-1.7(g) is wholly inapplicable.

II.    **Defendants Are Not Liable Under Labor Law §200 Since They Did Not Control Plaintiff's Work Or Have Notice Of A Specific Dangerous Or Defective Condition.**

*A. Means or Methods Standard*

Firstly, it is indisputable that 88 GREENWICH and BLACK DIAMONDS lacked the requisite control, direction, and/or supervision of plaintiff's work so as to be subject to Labor Law §200 under the *means or methods* standard.

Although the Plaintiff could not recall who he worked for at 88 Greenwich Street Pinnacle payroll records clearly indicate that he was employed by Pinnacle to work at 88 Greenwich Street performing exterior cleaning on September 22 and September 23, 2001. Exhibit L and Exhibit K.  Moreover, he admits that at sites where Plaintiff was employed by Pinnacle, he was supervised by Pinnacle.Exhibit F at 132:7-17.  He wore a mask, suit and gloves

while working at the building. Exhibit E at 231:8-12. He used his own half mask but he was provided the mask filters, the suit, and gloves at the job site. Exhibit E at 231:13-25 and at 232:2. Neal Cohen, on behalf of the building's owner, hired Pinnacle to clean only the outside of the building at 88 Greenwich Street. Exhibit H at 41:23 - 42:8. It was Pinnacle who decided what equipment its employees would use at 88 Greenwich in order to perform the exterior cleaning. Exhibit H at 193:12-20. The building ownership did not provide respirators or safety equipment to employees of contractors hired to work at 88 Greenwich Street in the aftermath of 9/11. Exhibit H at 130:14-19 and at 132:12-22.

The Plaintiff has proffered no evidence sufficient to prove that 88 GREENWICH and BLACK DIAMONDS controlled, directed or supervised his work at 88 Greenwich Street and as such 88 GREENWICH and BLACK DIAMONDS are entitled to summary judgment as to Plaintiff's Labor Law § 200 claim under the *means or methods* standard.

**B. Premises Condition Standard**

Likewise, there has been no evidence offered by the Plaintiff to establish that 88 GREENWICH and BLACK DIAMONDS created the dangerous condition, if any existed, on the exterior of the building located at 88 Greenwich Street. In addition, 88 GREENWICH and BLACK DIAMONDS had no notice of a specific defect or dangerous condition that may have been present on the exterior of the building located at 88 Greenwich Street at the time Plaintiff worked there.

Following the events of September 11, 2001, Neal Cohen first visited the building at 88 Greenwich Street on behalf of the building's owners on September 13, 2001. Exhibit H at 66:2-4. After inspecting the building, he found no structural damage to the building as a result of the World Trade Center collapse. Exhibit H at 91:5-12. EM&CA was hired by the building owners to perform air and bulk testing for asbestos at 88 Greenwich Street and none was found. Exhibit H at 113:20 - 114:25, at 109:23 - 110:3 and at 115:17-24. As such, 88 GREENWICH and BLACK DIAMONDS had no notice of any specific defect or dangerous

14

condition at 88 Greenwich Street prior to the Plaintiff working there.

Plaintiff argues in his opposition that the Defendants had notice of a specific or dangerous condition. However, if this is the case, then it follows that the Plaintiff, a licensed asbestos worker and environmental cleaner, was retained to perform work at 88 Greenwich Street, in order to remedy the alleged "hazard". 88 GREENWICH and BLACK DIAMONDS cannot be held liable for any injury Plaintiff may have suffered from hazards inherent in the work he was hired to perform. *Gasper v. Ford Motor Co.*, 13 N.Y.2d 104, 110 (1963)(internal citations omitted); *see also Kowalsky v. Conreco Co.*, 264 N.Y. 125, 128 (1934)("No responsibility rests upon an owner of real property to one hurt through a dangerous condition which he has undertaken to fix…An employee cannot recover for injuries received while doing an act to eliminate the cause of the injury"). Thus, even if this Court were to put aside the record evidence and find there is a question as to whether 88 GREENWICH and BLACK DIAMONDS had notice of a specific defect or dangerous condition, the defendant cannot be found liable as to Plaintiff's Labor Law § 200 claim under the premises condition standard.

In cases involving a worksite hazard that was not created by the premises owner, a plaintiff must establish that the owner had notice- whether actual or constructive-of that specific hazard before the owner can be subject to premises condition liability. *See Chowdhury v. Rodriguez*, 57 A.D.3d 121, 128, (2d Dep't 2008). To give rise to constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discovery and remedy it." *Gordon v. Am. Museum of Natural History*, 492 N.E.2d 774, 775 (N.Y. 1986); *Bykofsky v. Waldbaum's Supermarkets, Inc.,* 619 N.Y.S.2d 760, 761 (N.Y.App.Div.1994). Significantly, "awareness of the general likelihood of an event is not sufficient to constitute constructive notice." *Lamela,* 560 F. Supp. 2d at 223-24 (citing *Taylor v. United States*, 121 F.3d 86, 90 (2d Cir. 1997); *Gordon*, 492 N.E.2d 774), and a

15

"general awareness that a dangerous condition may be present is legally insufficient to constitute notice of the particular condition" alleged to have caused the injury in question, *Piacquadio v. Recine Realty Corp.*, 646 N.E.2d 795 at 796 (internal quotation marks omitted). Labor Law § 200 requires, instead, notice of the specific condition that allegedly caused the plaintiff's injury at the specific location alleged. *See Gordon*, 492 N.E.2d at 775; *Cahill v. Triborough Bridge & Tunnel Auth.*, 819 N.Y.S.2d 732, 737 (N.Y.App.Div. 2006)("The notice must call attention to the specific defect or hazardous condition, and its specific location." (citation omitted)).

For instance, in *Gordon v. American Museum of Natural History*, the New York Court of Appeals dismissed a plaintiff's premises condition claim because the plaintiff failed to adduce evidence demonstrating that the complained-of hazard, a particular piece of waxed-paper litter, had been present on the defendant-museum's front steps, the site of the accident, for long enough for defendant to observe and remove it. 492 N.E.2d at 775. The Court noted that the plaintiff failed to show that anyone had observed the piece of litter on the steps or to provide any indication that it had been there for some appreciable time period. *Id.* And the Court rejected plaintiff's contention that the defendant's general awareness of litter in front of the building was sufficient to create constructive notice of the particular piece of litter that caused plaintiff's fall. *Id.* ("The defect in the plaintiff's case here… is not an inability to prove the causation element of his fall but the lack of evidence establishing constructive notice of the particular condition that caused his fall."). The Court accordingly overturned the jury's liability finding against the premises-owner defendant. *Id.*

Similarly, in *Lamela v. City of New York*, the District Court for the Eastern District of New York rejected plaintiff's contention that defendants had constructive notice of the soft soil that gave away under plaintiff's footing, causing him to all into a trench nearby, again because

the plaintiff failed to put forward evidence that defendants should have been aware of that particular condition. 560 F. Supp. 2d at 223-24. The Court rejected the plaintiff's theory that constructive notice was present "based upon the well known phenomenon that the ground immediately adjacent to the opening of any trench [] could be unstable." *id.* At 223, noting that the witness testified that the ground prior to the accident appeared "hard" and "dry," *id.* at 219. The Court, accordingly, granted defendants' motion for summary judgment on plaintiff's Labor Law § 200 and negligence claims. *Id* at 224-225.

Courts require this level of specificity because "[c]onstructive notice of a *particular* condition is inextricably intertwined with the concept of foreseeability." *See Taylor,* 121 F.3d at 90 (citing *Masone v. New York*, 563 N.Y.S.3d 992, 994 (N.Y.Ct.Cl.1990)) (original emphasis). "[W]hen knowledge of a broadly defined, generalized danger is imputed to a defendant, it is less likely that the defendant would reasonably foresee the particular risk of injury sustained by the plaintiff… Courts must, therefore, examine the facts of each case to determine whether the plaintiff has proven notice of a dangerous condition at a level of a specificity sufficient to support liability." *Taylor*, 121 F.3d at 90.

Since 88 GREENWICH and BLACK DIAMONDS did not create the dangerous condition, if any existed, and the record evidence demonstrates they had no notice of a *specific* or dangerous condition, if any existed, they are entitled to summary judgment as to the Plaintiff's Labor Law § 200 claim under the *premises condition standard.*

### C. A Premises Owner Is Not Required to Protect Contractor Workers From Dangers Inherent In The Work Or Against Hazards That The Workers Were Hired To Remediate.

A premises owner's duty to provide a safe place to work "does not extend to hazards which are 'part of or inherent in' the very work being performed or to those hazards that may be

17

readily observed by reasonable use of the senses in light of the worker's age, intelligence[,] and experience." *Bombero v. NAB Constr. Corp.*, 780 N.Y.S.2d 333, 334 (N.Y.App.Div. 2004)(citing, among other cases, *Gasper v. Ford Motor Co.*, 192 N.E.2d 163, 166 (N.Y. 1963)); see also *Bodtman v. Living Manor Love, Inc.*, 963 N.Y.S.2d 35, 37 (N.Y.App.Div. 2013)(dismissing Labor Law § 200 claim and negligence claim where dangerous condition on roof was just as apparent to seasoned worker as it was to defendants (citing *Bombero*, 70 N.Y.S.2d at 334-335)). Similarly, a premises owner has no duty to warn workers about open and obvious hazards at the worksite. *See, e.g., Wilhouski v. Canon U.S.A.*, 622 N.Y.S.2d 319, 320 (N.Y.App.Div.1995)("The defendants are not liable for the plaintiff's injuries under either Labor Law § 200 or the common-law negligence theory of liability because they had no duty to warn the plaintiff or his employer of dangers and conditions that were open and obvious." (citations omitted)). Instead, "[w]hen a workman confronts the ordinary and obvious hazards of his employment, and has at his disposal the time and other resources... to enable him to proceed safely, he may not hold others responsible if he elects to perform his job so incautiously as to injure himself." *See Abbadessa v. Ulrik Holding Ltd.*, 664 N.Y.S.2d 620, 620 (N.Y.App.Div. 1997); see also *Marin v. San Martin Rest., Inc.*, 731 N.Y.S.2d 70, 71 (N.Y.App.Div. 2001)(granting summary judgment for defendant where plaintiff-sanitation worker injured his back after he "elected to perform his job of lifting the garbage bag into the back of the sanitation truck without assistance").

As a corollary, a premises owner does not have a duty to protect contractor workers from hazards or conditions that those workers were brought onsite to remediate. *Kowalsky v. Conreco Co.*, 190 N.E. 206, 207 (N.Y. 1934)("No responsibility rests upon an owner of real property to one hurt through a dangerous condition which he has undertaken to fix"); *id.* ("An employee

18

cannot recover for injuries received while doing an act to eliminate the cause of the injury.").
The rationale here is clear: "it would be manifestly absurd to hold a master to the duty of
providing a safe place when the very work in which the servant is engaged makes it unsafe."
*Byars v. Moore-McCormack Lines, Inc.*, 155 F.2d 587, 588 (2d Cir. 1946) (quoting *Mullin v.
Genesee Cnty. Elec. Light, Power & Gas Co.*, 202 N.Y. 275, 279 (N.Y.1991)).

<u>CONCLUSION</u>

The evidence in this litigation indisputably shows 88 GREENWICH and BLACK
DIAMONDS are entitled to judgment as a matter of law. 88 GREENWICH and BLACK
DIAMONDS can not be held liable for Plaintiff's injuries because they did not control, direct or
supervise his work; they did not have notice of a specific defect or dangerous condition; and
there is no record evidence Plaintiff was engaged in construction, excavation or demolition work
while at 88 Greenwich Street on September 22 and 23, 2001.  For these reasons, this Court
should dismiss Plaintiff's Complaint in its entirety.

**WHEREFORE**, Defendants, 88 GREENWICH LLC and BLACK DIAMONDS
respectfully request an Order pursuant to Fed. R. Civ. P. 56, granting 88 GREENWICH LLC and
BLACK DIAMONDS' Motion For Summary Judgment and dismissing Plaintiff's claims against
88 GREENWICH LLC and BLACK DIAMONDS, and for any other relief this Court deems just
and proper.

Dated: New York, New York
        August 19, 2014

Respectfully submitted,

Law Office of Frank A. Scanga

By:

Frank A. Scanga (FAS-1460)
*Attorneys for Defendant*
88 GREENWICH LLC and BLACK
DIAMONDS LLC
488 Madison Avenue
Suite 1100
New York, New York 10022
(212) 758-4040


TO:   GREGORY J. CANNATA & ASSOCIATES
Plaintiffs' Liaison
In Re Lower Manhattan Disaster Site
Litigation
233 Broadway, 5th Floor
New York, New York 10279
Tel.: 212-553-9206
Via ECF

All Defense Counsel
Via ECF