UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x

IN RE WORLD TRADE CENTER LOWER
MANHATTAN DISASTER SITE LITIGATION

      Docket: 21-mc-102

------------------------------------------------------------ x

ANGEL AVILA and AMMSY AVILA,

                Plaintiffs,

          -against-

ABATEMENT PROFESSIONALS, ET AL.,

              Defendants.

**ORDER AND OPINION
GRANTING BATTERY PARK
CITY AUTHORITY'S MOTION
FOR SUMMARY JUDGMENT
DISMISSING COMPLAINTS**

Case Number: 07-cv-00060

------------------------------------------------------------ x

RODRIGO CAMPOZANO and ESTHER
CAMPOZANO,

                Plaintiffs,

          -against-

110 CHURCH STREET, ET AL.,

              Defendants.

Case Number: 07-cv-04459

------------------------------------------------------------ x

ANDRZEJ CHOJNOWSKI and BOZEMA
CHOJNOWSKI,

                Plaintiffs,

          -against-

110 CHURCH STREET, ET AL.,

              Defendants.

Case Number: 07-cv-01588

------------------------------------------------------------ x

MIECZYSLAW DABROWSKI and AGATA
DABROWSKI,

                Plaintiffs,

```
                                              :
            -against-                         :    Case Number: 07-cv-05283
                                              :
160 WATER STREET, INC., ET AL.,               :
                                              :
                  Defendants.                 :
------------------------------------------------ x
TADEUSZ KOWALEWSKI and BEATA                  :
KOWALEWSKI,                                   :
                                              :
                  Plaintiffs,                 :
                                              :
            -against-                         :    Case Number: 06-cv-01521
                                              :
DEUTSCHE BANK TRUST COMPANY                   :
AMERICAS, ET AL.,                             :
                                              :
                  Defendants.                 :
------------------------------------------------ x
JERZY MUSZKATEL,                              :
                                              :
                  Plaintiff,                  :
                                              :
            -against-                         :    Case Number: 06-cv-05285
                                              :
90 CHURCH STREET LIMITED                      :
PARTNERSHIP, ET AL.,                          :
                                              :
                  Defendants.                 :
------------------------------------------------ x
WALDEMAR ROPEL and KRYSTYNA ROPEL, :
                                              :
                  Plaintiffs,                 :
                                              :
            -against-                         :    Case Number: 06-cv-01520
                                              :
233 BROADWAY OWNERS LLC, ET AL.,              :
                                              :
                  Defendants.                 :
------------------------------------------------ x
MAREK SOCHA and HALINE SOCHA,                 :
                                              :
                  Plaintiffs,                 :
                                              :
            -against-                         :    Case Number: 09-cv-00680
```

2

```
                                            :
110 CHURCH LLC, ET AL.,                     :
                                            :
                      Defendants.           :
-------------------------------------------- x
```

ALVIN K. HELLERSTEIN, U.S.D.J.:

        The eight Plaintiffs identified in the captions sued Battery Park City Authority ("BPCA") to recover damages for injuries they incurred in cleaning up the toxic dust resulting from the collapse on September 11, 2001 of the Twin Towers of the World Trade Center.  Plaintiffs allege that they worked in buildings located on land owned by BPCA, and that BPCA is liable to them for negligence and for violations of sections 200 and 241(6) of the New York Labor Law.

        Plaintiffs' claims were dismissed on July 29, 2009, and thereafter, for failure to serve notices of claim within the statutorily required time.  Subsequently, the New York State legislature passed legislation, commonly referred to as "Jimmy Nolan's Law," which revived the time-barred claims against BPCA, and provided an additional year within which to file notices of claim as prelude to suit.  The eight plaintiffs each took advantage of the new law, and sued BPCA again. BPCA moves for summary judgment to dismiss the eight lawsuits, arguing that Jimmy Nolan's Law violates the New York State Constitution.  The New York State Attorney General's Office intervened and filed a brief in defense of the law, after due notice provided to him.

        BPCA's motion is granted.  For the reasons discussed in this opinion, Jimmy Nolan's law is unconstitutional as applied to BPCA.

## I.    BACKGROUND

### A.    The Battery Park City Authority

        The New York State Legislature established BPCA in 1968 as a public benefit corporation.  Its purpose was to eliminate urban blight in Manhattan's lower west side and,

specifically, the "substandard, insanitary, deteriorated and deteriorating conditions" of its housing. N.Y. Pub. Auth. Law § 1971 (McKinney's 2014); *see also* N.Y. Gen. Constr. Law § 66(4) (McKinney's 2014) (defining a "public benefit corporation" as a "corporation organized to construct or operate a public improvement"). The Legislature charged BPCA with developing low-income housing and carrying out the "clearance, replanning, reconstruction and rehabilitation of such substandard and insanitary areas." N.Y. Pub. Auth. Law § 1971 (McKinney's 2014). The Legislature gave BPCA the power "to sue and be sued," and authorized it to raise money through the issuance of bonds to the "private investing public." *Id.* §§ 1971, 1974. BPCA is solely responsible for repayment of its bond obligations and neither the City of New York nor the State incurs any liability on such obligations. *See* N.Y. Pub. Auth. Law § 1979 (McKinney's 2014) ("The bonds, notes and other obligations of the authority shall not be a debt of the state of New York or of the city, and neither the state nor the city shall be liable thereon, nor shall they be payable out of any funds other than those of the authority."). Pursuant to revenue-sharing agreements with the City and the State of New York, BPCA remits portions of rent-generated revenue to the City and State. *See, e.g.*, Hugh L. Carey Battery Park City Authority, Financial Statements: April 30, 2014 and 2013 (Unaudited) at 48 (Aug. 5, 2014), *available at* http://www.batteryparkcity.org/new/wordpress/wp-content/uploads/2013/02/2014-April-30-and-2013-Financial-Statements.pdf.

## B.    Jimmy Nolan's Law and the Revival of Plaintiffs' Claims

Plaintiffs originally filed their lawsuits against BPCA between 2006 and 2009. Under New York law, as a condition precedent to filing suit, Plaintiffs were required to serve BPCA with notice of their claims within 90 days after their claims had accrued. *See* N.Y. Gen. Mun. Law § 50-e(1)(a) (McKinney's 2014); N.Y. Pub. Auth. Law § 1984 (McKinney's 2014).

4

Plaintiffs failed to file timely notices of claim.  As a result, by Order dated July 29,

2009, I dismissed five of their complaints.[1]  *See* Summary Order Regarding City Defendants'

Motion for Partial Summary Judgment and Battery Park City Authority's Motion to Dismiss, 21-

mc-102, ECF No. 3462 (July 29, 2009).  For various reasons, BPCA did not move to dismiss the

actions commenced by Socha, Muszkatel, and Ropel, prior to the instant motion, for failure to file

timely notice of claim.[2]

On September 16, 2009, the New York Legislature enacted Jimmy Nolan's Law,

which amended section 50-I of the New York General Municipal Law to provide:

> Notwithstanding any other provision of law to the contrary, including any other
> subdivision of this section, section fifty-e of this article, . . . any cause of action
> against a public corporation for personal injuries suffered by a participant in World
> Trade Center rescue, recovery or cleanup operations as a result of such participation
> which is barred as of the effective date of this subdivision because the applicable
> period of limitation has expired is hereby revived, and a claim thereon may be filed
> and served and prosecuted provided such claim is filed and served within one year of
> the effective date of this subdivision.

N.Y. Gen. Mun. Law § 50-i(4)(a) (McKinney's 2014).  The bill sponsors stated that the recovery

workers "should not be denied their rights to seek just compensation simply because they were

provided incorrect information about their work conditions, did not immediately recognize the

causal connection between their injuries and their exposure, or were unaware of the applicable time

limitations." N.Y. State Assembly Mem. Supp. Legislation, *reprinted in* Bill Jacket for 2009 A.B.

7122, Ch. 440, at 6 (July 17, 2009).  The legislation passed without opposition, and Plaintiffs

subsequently served notices of claim on BPCA within the enlarged allotted time.  BPCA now

---

[1] The Plaintiffs whose claims were dismissed on July 29, 2009 were Avila, Campozano, Chojnowski, Dabrowski, and Kowalewski.
[2] Muszkatel voluntarily discontinued his action with prejudice. *See* Decl. Phillip Goldstein Supp. BPCA Mot. Summ. J. ("Goldstein Decl."), Exh. J. Ropel did not initially name BPCA as a defendant in his complaint and the New York Supreme Court denied his application for leave to file a late notice of claim. *See* Decl. John Flannery Supp. BPCA Mot. Summ. J. ("Flannery Decl."), Exh. M. Socha filed his complaint on January 23, 2009 without first serving a notice of claim upon BPCA. *See* Goldstein Decl., Exh. D.

moves for summary judgment dismissing plaintiffs' claims on the ground that Jimmy Nolan's Law
violated its due process rights guaranteed by the New York State Constitution.

## II.    STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no
genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."
Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A genuine issue of
material fact exists "if the evidence is such that a reasonable jury could return a verdict for the
nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In ruling on a
motion for summary judgment, the court must view all evidence in the light most favorable to the
nonmoving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir.
2004), and must "resolve all ambiguities and draw all permissible factual inferences in favor of the
party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford*, 391 F.3d at 83.

## III.   DISCUSSION

### A.    Statute of Limitations

Plaintiffs who wish to sue public defendants, including public benefit corporations
such as BPCA, must serve such defendants with a notice of claim within 90 days of the accrual of
their claims. *See* N.Y. Pub. Auth. Law § 1984 (McKinney's 2014); N.Y. Gen. Mun. Law § 50-e(1)
(McKinney's 2014).  At the time Plaintiffs' claims accrued, they were required to commence their
lawsuit within three years of accrual. *See* L. 1990, c. 804, § 72 (eff. Aug. 24, 1990) (providing no
abbreviated limitations period within which commencement of suit required).[3]  The accrual date,
generally, is the date a plaintiff's injury occurred. *See* N.Y. C.P.L.R. § 214(5) (McKinney's 2014);
*Snyder v. Town Insulation*, 81 N.Y.2d 429, 432–33 (1993).  However, if a claim arises from the

---

[3] The Legislature amended section 1984 of the New York Public Authorities Law on June 15, 2013 to require the
commencement of an action against BPCA within one year and 90 days of accrual. *See* L. 2012, c. 500, § 61 (eff. June
15, 2013).

latent effects of exposure to a harmful substance, the claim accrues, not when the injury occurred,

but "on the date of *discovery* of the injury by the plaintiff or on the date when through the exercise

of reasonable diligence the injury should have been discovered, whichever is earlier." N.Y.

C.P.L.R. § 214-c(3) (McKinney's 2014) (emphasis added). Upon timely motion, a court "may

extend the time to serve a notice of claim." N.Y. Gen. Mun. Law § 50-e(5) (McKinney's 2014). If

not extended, failure to serve a timely notice of claim, or timely seek leave to serve a late notice of

claim, requires dismissal of a plaintiff's claims. *See 423 S. Salina Street, Inc. v. City of Syracuse*,

68 N.Y.2d 474, 494 (1986).

      None of the eight Plaintiffs served a timely notice of claim on BPCA prior to filing

their original actions.[4]  It is not disputed that absent revival of Plaintiffs' claims by Jimmy Nolan's

Law, the claims would be barred for failure to serve timely notices of claim. Accordingly, the

viability of Plaintiffs' actions turns on the constitutionality of Jimmy Nolan's Law.

**B.**    **Capacity of BPCA to Challenge Constitutionality of Jimmy Nolan's Law**

      The Attorney General argues that BPCA lacks capacity to challenge the

constitutionality of Jimmy Nolan's Law. New York follows the traditional rule that "municipalities

and other local governmental corporate entities and their officers lack capacity to mount

constitutional challenges to acts of the State and State legislation." *City of New York v. State of

New York*, 86 N.Y.2d 286, 289 (1995); *see also Village of Herkimer v. Axelrod*, 58 N.Y.2d 1069,

1071 (1983) ("[P]olitical subdivisions of the State are powerless to challenge the constitutionality of

an act of the Legislature that restricts the subdivision's governmental powers."). Thus,

---

[4] Avila commenced suit against BPCA on January 3, 2007. *See* Flannery Decl., Exh. R.  Campozano commenced suit on February 20, 2007. *See id.* Chojnowski served his check-off complaint on BPCA on September 20, 2007. *See id.* Dabrowski commenced suit on May 20, 2007. *See id.* Kowalewski filed a check-off complaint against BPCA on June 7, 2007. *See id.* Muszkatel commenced suit in New York state court on July 29, 2005. *See* Goldstein Decl., Exh. E. On November 2, 2005, Ropel initially moved in New York Supreme Court for leave to serve a late notice of claim on BPCA. *See* Flannery Decl., Exh. M.  After the application was denied, Ropel filed a complaint on February 24, 2006 that did not name BPCA as a defendant. *See id.*, Exh. N.

constitutional challenges brought by municipalities and local governmental agencies typically are dismissed. *See, e.g., Matter of Jeter v. Ellenville Cent. Sch. Dist.*, 41 N.Y.2d 283 (1977) (holding that local board of education and department of social services lacked "substantive right" to challenge constitutionality of provision of New York Education Law allocating the cost of educating pupils placed in family homes to the district in which the pupil originally resided); *Matter of Cnty. of Cayuga v. McHugh*, 4 N.Y.2d 609 (1958) (holding that county, as a "political subdivision of the State, created by the State Legislature and possessing no power save that deputed to them by that body," had no power to challenge decision of State Commission of Correction requiring county to close jail).

However, public benefit corporations such as BPCA, are not necessarily political subdivisions of New York State. Rather, a "particularized inquiry is necessary to determine whether—for the specific purpose at issue—the public benefit corporation should be treated like the State." *Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 387 (1987). To conduct this inquiry, Courts look to the public benefit corporation's enabling legislation, focusing on the degree of relevant autonomy bestowed on the public benefit corporation by the Legislature. *See, e.g., Matter of Plumbing, Heating, Piping & A.C. Constr. Ass'n v. New York State Thruway Auth.*, 5 N.Y.2d 420, 423 (1959) ("[T]he statute creating the Thruway Authority is replete with provisions which emphasize its separate and independent existence and serve to distinguish it sharply from the type of State board or department which would be subject to the requirements of the State Finance Law with respect to bidding.").

In various contexts, the New York Court of Appeals has held that public benefit corporations are not political subdivisions. *See, e.g., Collins v. Manhattan & Bronx Surface Transit Operating Auth.*, 62 N.Y.2d 361, 369 (1984) (holding that public authority was not a political

8

subdivision of the State and therefore not subject to Constitutional provision extending protections to civil servants); *John Grace & Co. v. State Univ. Constr. Fund*, 44 N.Y.2d 84, 87-89 (1978) (holding that public authority was not a political subdivision and therefore not subject to statutes providing economic relief to state agencies); *see also Bordeleau v. State of New York*, 18 N.Y.3d 305, 316 (2011) ("This Court has consistently recognized public authorities as legal entities separate from the State, enjoying an existence separate and apart from the State, its agencies and political subdivisions."). On the other hand, where the public benefit corporation performs functions "essentially governmental in nature" and receives primarily public funding, it may be considered a political subdivision. *Clark-Fitzpatrick, Inc.*, 70 N.Y.2d at 387-88 ("[W]e hold, in light of the essential public function served by defendant in providing commuter transportation and the public source of much of its funding, that defendant should receive the same immunity from punitive damages as do the State and its political subdivisions."); *see also Black River Regulating Dist. v. Adirondack League Club*, 307 N.Y. 475, 487 (1954) ("A regulating district charged with authority to carry out the public purpose is an agency of the State depending for its existence and performing its functions subject to the control and direction of the State.").

        *Patterson v. Carey,* 41 N.Y.2d 714 (1977), illustrates the dichotomy. In that case, the Jones Beach State Parkway Authority ("Parkway Authority") challenged section 153-c of the New York Public Authorities Law, which rescinded a toll increase on the Southern State Parkway. The Legislature had created the Parkway Authority to improve the roads in eastern Long Island. *See id.* at 716-17. In order to raise revenue for the improvement of the Southern State Parkway, the Parkway Authority issued bonds to private investors and the State pledged "not to limit or alter the rights vested in the authority to the detriment of [bondholders]." *Id.* at 717. The toll increase was intended to secure the Parkway Authority's bond obligations, and the Parkway Authority argued

9

that the State's rescission of the toll interfered with its bond obligations and the bondholders' property rights without due process of law. *See id.* at 717-19. The Court held that the Parkway Authority had standing to challenge the law. *See id.* at 719 n. * ("[T]he governmental plaintiffs, as well as the institutional representative of the bondholders, have sufficient standing to maintain this action.").

BPCA, like the Parkway Authority, was created to be independent of the State in performing primarily private functions, funded primarily by private means. The Legislature gave BPCA the power to "sue and be sued," to "acquire, lease, hold, mortgage and dispose of real property and personal property or any interest therein for its corporate purposes," and "to borrow money and issue negotiable bonds, notes or other obligations and to provide for the rights of the holders thereof." N.Y. Pub. Auth. Law § 1974 (McKinney's 2014). The Legislature provided that BPCA was to be solely responsible for the repayment of its bond obligations. *See* N.Y. Pub. Auth. Law § 1979 (McKinney's 2014). Holders of BPCA's bonds had no recourse against the State, and the State pledged not to interfere with BPCA's ability to honor its debts.[5] *See* N.Y. Pub. Auth. Law §§ 1978, 1979 (McKinney's 2014).

By reviving Plaintiffs' claims, the Legislature has acted to expose BPCA, and its general fund, to a liability that, without the legislation, would not have existed. Plaintiffs' claims had been extinguished by limitations; the purported revival of those claims by legislative act burdens BPCA's general fund and its ability to repay bond obligations, for which it is solely and independently responsible. *See* Aff. Robert Serpico Supp. BPCA Mot. Summ. J. ("Serpico Aff.")

---

[5] This division of authority and obligation, between the State and public benefit corporations, permits the State to initiate, and benefit from, public works projects while remaining free from "the burden of long-term debt." *Schulz v. State of New York*, 84 N.Y.2d 231, 244 (1994) (noting that shortly after the turn of the 20th century the Legislature created "legally separate public benefit corporations" in order to fund public works projects while avoiding the burden of long-term debt); *see also Bordeleau*, 18 N.Y.3d at 315 ("Essentially, these public benefit corporations serve to protect the State from liability and enable public projects to be carried on free from restrictions otherwise applicable.").

10

¶¶ 6-7, 10-12; N.Y. Pub. Auth. Law § 1979.  For these reasons, I hold that BPCA is an entity

independent of the State and has capacity to challenge the constitutionality of the Legislature's acts.

## C.    Constitutionality of Jimmy Nolan's Law

The New York State Constitution provides that "[n]o person shall be deprived of life,

liberty or property without due process of law."  N.Y. Const. art. I, § 6.  BPCA argues that it is

entitled to the constitutional protection and that the Legislature's re-imposition of an extinguished

claim deprives it of property without due process of law.  *See* Mem. Law Supp. BPCA Mot. Summ.

J. ("BPCA Br.") at 6-11.  Plaintiffs and the Attorney General contend that the law is consistent with

New York Court of Appeals' decisions upholding revival statutes.

Statutes of limitations serve important policies in New York, such as "fairness to

defendant and society's interest in adjudication of viable claims not subject to the vagaries of time

and memory." *Ackerman v. Price*, 84 N.Y.2d 535, 542 (1994).  For this reason, the New York

Court of Appeals has described so-called "revival statutes" as an "extreme exercise of legislative

power," *Hopkins v. Lincoln Trust Co.*, 233 N.Y. 213, 215 (1922) (Cardozo, J.), and upheld them

only in limited circumstances.

> For example, in *Gallewski v. Hentz & Co.*, the New York Court of Appeals held:
>
> > [A] revival statute is not necessarily and per se void as a taking of 'property' without
> > due process of law. . . . [T]he Legislature may constitutionally revive a personal
> > cause of action where the circumstances are exceptional and are such as to satisfy the
> > court that serious injustice would result to plaintiffs not guilty of any fault if the
> > intention of the Legislature were not effectuated.

301 N.Y. 164, 174 (1950).  In that case, the plaintiff, a resident of the Netherlands, was deported to

a concentration camp in Czechoslovakia after the Nazi invasion on May 10, 1940, where he was

presumed to have perished. *See id.* at 168.  Within two weeks, the plaintiff's brokerage firm in New

York liquidated his securities portfolio without his consent, in violation of the brokerage agreement.

11

*See id.* Following the liberation of the Netherlands, the appointed administrator commenced an action against the brokerage firm that was barred by the six year statute of limitations period. *See id.* at 169. To account for this situation, the New York Legislature amended the New York Civil Practice Law to revive the time-barred claims of residents of Nazi-occupied countries for one year following enactment. *See* L. 1950, ch. 759, § 1.

The New York Court of Appeals rejected the brokerage firm's argument that the enactment violated its constitutional right to due process of law. *See Gallewski*, 301 N.Y. at 173-74. Noting the need for courts to "approach each revival statute on its individual merits, in light of its own peculiar circumstances," the Court held that revival of the plaintiff's claim was "entirely proper." *Id.* at 174. The German occupation had "resulted in a complete disruption of communication," and residents of German-occupied countries suffered from "a practical and total inability to commence action in the courts." *Id.* at 175. Accordingly, revival complied with "elementary notions of justice and fairness." *Id.*; *see also Robinson v. Robins Dry Dock & Repair Co.*, 238 N.Y. 271, 279 (1924) (noting that "in some cases the right to interpose a bar to a right of action constitutes in effect a property right which the Legislature may not take away, but at the other extreme are cases where both instinct and reason revolt at the proposition that redress for a wrong must be denied because the Legislature may not remove a statutory bar which has conferred an immunity which is contrary to all prevailing ideas of justice").

Another exception is found where plaintiffs had no way to discover their injuries within the time period for commencing an action. For example, in *Matter of McCann v. Walsh Constr. Co.*, the plaintiff was exposed to compressed air in 1938 during the construction of the Queens Midtown Tunnel. *See* 282 A.D. 444, 445-46 (1953). In 1950, over ten years after leaving his employer at the time of his exposure, he was found to have osteoarthritis due to caisson disease

12

caused by exposure to compressed air. *See id.* The Plaintiff filed a claim under the New York Workmen's Compensation Law, but his claim was denied. *See id.* at 446. At that time, section 40 of the New York Workmen's Compensation Law provided that, except where an employee remained with the same employer from the date he contracted the disease through the date of disability, "no employee was entitled to compensation for disablement caused by an occupational disease unless the disease was contracted within twelve months previous to the date of disablement." *See id.* (citing L. 1931, ch. 344). Recognizing that it was unjust to apply such a rule to "slow-starting" diseases, the Legislature amended the Workmen's Compensation Law to exclude caisson disease from the 12-month rule. *See id.* at 446-47. The New York Court of Appeals upheld the amendment, noting that "in the case of a disease of an insidious character, the effects of which might be latent or long delayed, the right to compensation might be barred by the operation of the Statute of Limitations even before the claimant was aware of the fact that he had the disease." *Id.* at 450. Thus, the "arbitrary application of the Statute of Limitations would work injustice." *Id.*

More recently, in *Hymowitz v. Eli Lilly & Co.*, the Court upheld legislation that revived previously barred claims for injuries resulting from the ingestion of the drug diethylstilbestrol ("DES"). *See* 73 N.Y.2d 487 (1989). In that case, the Legislature was concerned with the application of the long-standing rule that "the limitations period accrued upon exposure in actions alleging personal injury caused by toxic substances." *Id.* at 503. When applied to diseases with long latency periods, such as complications caused by DES ingestion, plaintiffs' claims were frequently barred by the statute of limitations before they discovered their injury. *See id.* at 504. To address this problem, the Legislature instituted a discovery rule for "latent effects of exposure to any substance" and simultaneously revived, for one year, causes of action for exposure to DES that had been time barred. *Id.* The New York Court of Appeals concluded that because "the exposure

13

rule prevented the bringing of timely actions," "exceptional circumstances are presented, . . . an injustice has been rectified, and . . . the requirements of *Gallewski v. Hentz & Co.* have been met." *Id.* at 514; *see also In re Agent Orange Prod. Liab. Litig.*, 597 F. Supp. 740, 810-13 (E.D.N.Y. 1984) (upholding revival statute exempting soldiers exposed to "agent orange" during the Vietnam War from the harsh statute of limitations rule calculating time to commence suit from date of exposure).

The Legislature gave three rationales for Jimmy Nolan's law: (1) "incorrect information about [plaintiffs'] work conditions"; (2) failure of workers to recognize a causal connection between the injuries they incurred and the toxic environment in which they worked; and (3) the fact that some workers were "unaware of the applicable time limitations." N.Y. State Assembly Mem. Supp. Legislation, *reprinted in* Bill Jacket for 2009 A.B. 7122, Ch. 440, at 6 (July 17, 2009). These rationales do not amount to the "exceptional circumstances" justifying the "extreme exercise of legislative power" that a revival statute entails. *See Gallewski*, 301 N.Y. at 174; *Hopkins*, 233 N.Y. at 267.

The "discovery rule" provided by section 214-c of the New York Civil Practice Law and Rules, which was unavailable to the plaintiffs in *Hymowitz*, protected the Plaintiffs here against the unjust consequences imposed by the prior statute of limitations rule, which calculated the limitations period from the date of exposure. In calculating the time by which a plaintiff with a latent and slow-developing disease must file a notice of claim and sue, the time now runs from when the plaintiff *discovers* his condition, not from when he incurs the injury. *See* N.Y. C.P.L.R. § 214-c(3) (McKinney's 2014) (emphasis added). If medical knowledge about the cause does not then exist, the plaintiff may sue within an additional year from *discovery of the cause* (but not more than five years from discovery of the injury). *See* N.Y. C.P.L.R. § 214-c(4) (McKinney's 2014)

14

(emphasis added).[6] Thus, during all relevant times, the Plaintiffs enjoyed protection from the "serious injustice" existing before the legislative changes reviewed in *McCann* and *Hymowitz*. There was no lingering injustice that Jimmy Nolan's Law had to correct.

Also absent in this case is a "practical and total inability to commence [an] action," which supported the constitutionality of the revival statutes at issue in *Robinson* and *Gallewski*. 301 N.Y. at 175. Here, those who wished to sue were not barred from doing so. There were over 10,000 cases filed in master calendar 21-MC-100, *see In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 954 F.Supp. 2d 192, 195 (S.D.N.Y. 2012) (discussing number of filed cases arising from clean-up activities in the World Trade Center complex), and approximately 850 additional cases arising from clean-up activities in the neighboring buildings filed in master calendars 21-MC-102 and 21-MC-103, *see id.* at 194 (discussing number of filed cases arising from clean-up activities in the neighboring buildings), and substantial publicity about the cases.

---

[6] Section 214-c(3) of the New York Civil Practice Law and Rules provides in full:

> For the purposes of sections fifty-e and fifty-i of the general municipal law, section thirty-eight hundred thirteen of the education law and the provisions of any general, special or local law or charter requiring as a condition precedent to commencement of an action or special proceeding that a notice of claim be filed or presented within a specified period of time after the claim or action accrued, a claim or action for personal injury or injury to property caused by the latent effects of exposure to any substance or combination of substances, in any form, upon or within the body or upon or within property shall be deemed to have accrued on the date of discovery of the injury by the plaintiff or on the date when through the exercise of reasonable diligence the injury should have been discovered, whichever is earlier.

Section 214-c(4) of the New York Civil Practice Law and Rules provides in full:

> Notwithstanding the provisions of subdivisions two and three of this section, where the discovery of the cause of the injury is alleged to have occurred less than five years after discovery of the injury or when with reasonable diligence such injury should have been discovered, whichever is earlier, an action may be commenced or a claim filed within one year of such discovery of the cause of the injury; provided, however, if any such action is commenced or claim filed after the period in which it would otherwise have been authorized pursuant to subdivision two or three of this section the plaintiff or claimant shall be required to allege and prove that technical, scientific or medical knowledge and information sufficient to ascertain the cause of his injury had not been discovered, identified or determined prior to the expiration of the period within which the action or claim would have been authorized and that he has otherwise satisfied the requirements of subdivisions two and three of this section.

15

Furthermore, Jimmy Nolan's law revived the cases of plaintiffs who delayed to sue, or file claims, even after they knew they had claims upon which to sue. Notably, Plaintiffs have not shown, and do not contend, that they failed "to recognize a causal connection" or were "unaware of the applicable time limitations."

The "exceptional" circumstances or "serious injustice" that the New York Court of Appeals has required for nearly 100 years is simply not present here. *See Gallewski*, 301 N.Y.2d at 174. Nor does enforcement of the notice of claim requirements confer upon BPCA "an immunity which is contrary to all prevailing ideas of justice." *Robinson*, 238 N.Y. at 279. Jimmy Nolan's Law does not fall within the narrow exception for revival statutes, and is unconstitutional under the Due Process Clause of the New York State Constitution, as applied to BPCA. *See* N.Y. Const. art. I, § 6. The claims of the eight Plaintiffs are dismissed for failing to file timely notices of claim, as required by section 50-e of the New York Municipal Law and section 1984 of the New York Public Authorities Law.

## IV.    CONCLUSION

For the foregoing reasons, BPCA's motion is GRANTED. The Clerk shall mark the following docket entries as terminated: Doc. No. 124 in Case No. 07-cv-00060, Doc. 190 in Case No. 07-cv-04459, Doc. No. 157 in Case No. 07-cv-01588, Doc. No. 138 in Case No. 07-cv-05283, Doc. No. 221 in Case No. 06-cv-01521, Doc. No. 178 in Case No. 06-cv-05285, Doc. No. 187 in Case No. 06-cv-01520, Doc. No. 102 in Case No. 09-cv-00680, and Doc. No. 5355 in master calendar 21-mc-102.

The Clerk shall enter judgment dismissing the Complaint against BPCA in the following cases: Case No. 07-cv-00060, Case No. 07-cv-04459, Case No. 07-cv-01588, Case No. 07-cv-05283, Case No. 06-cv-01521, Case No. 06-cv-05285, Case No. 06-cv-01520, and Case No.

16

09-cv-00680. Plaintiffs shall file an Amended Complaint by December 29, 2014, consistent with this Order and Opinion, dropping BPCA from the caption and the allegations against it, but retaining the paragraph numbering of the existing complaint. Defendants' Answers need not be amended.

SO ORDERED.

Dated:     New York, New York
           December 8, 2014

ALVIN K. HELLERSTEIN
United States District Judge

17